UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NORTHEASTERN DIVISION

| KENNY D. PHILLIPS, | ) | |
|---|---|---|
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | NO. 2:18-cv-00077 |
| | ) | CHIEF JUDGE CRENSHAW |
| JEFF SHELTON, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION

Kenny D. Phillips, a pretrial detainee in the custody of the Cumberland County Justice Center (CCJC) in Crossville, Tennessee, has filed a pro se complaint under 42 U.S.C. § 1983 (Doc. No. 1) and an application for leave to proceed in forma pauperis (IFP). (Doc. No. 2.)

**I.     Application to Proceed IFP**

Under the Prison Litigation Reform Act (PLRA), 28 U.S.C. § 1915(a), a prisoner bringing a civil action may apply for permission to file suit without prepaying the filing fee of $350.00 required by 28 U.S.C. § 1914(a). Because it is apparent from Plaintiff's IFP application that he lacks the funds to pay the entire filing fee in advance, his application (Doc. No. 2) will be granted by Order entered contemporaneously herewith.

**II.    Initial Review of the Complaint**

   **A.     PLRA Screening Standard**

Pursuant to 28 U.S.C. § 1915(e)(2)(B), the Court must dismiss any IFP complaint that is facially frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief. Similarly, § 1915A provides

1

that the Court shall conduct an initial review of any prisoner complaint against a governmental entity, officer, or employee, and shall dismiss the complaint or any portion thereof if the defects listed in § 1915(e)(2)(B) are identified. Under both statutes, this initial review of whether the complaint states a claim upon which relief may be granted asks whether it contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face," such that it would survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). Hill v. Lappin, 630 F.3d 468, 470–71 (6th Cir. 2010) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678. Applying this standard, the Court must view the complaint in the light most favorable to plaintiff and, again, must take all well-pleaded factual allegations as true. Tackett v. M & G Polymers, USA, LLC, 561 F.3d 478, 488 (6th Cir. 2009) (citing Gunasekera v. Irwin, 551 F.3d 461, 466 (6th Cir. 2009) (citations omitted)). Furthermore, pro se pleadings must be liberally construed and "held to less stringent standards than formal pleadings drafted by lawyers." Erickson v. Pardus, 551 U.S. 89, 94 (2007) (quoting Estelle v. Gamble, 429 U.S. 97, 106 (1976)). However, pro se litigants are not exempt from the requirements of the Federal Rules of Civil Procedure, Wells v. Brown, 891 F.2d 591, 594 (6th Cir. 1989), nor can the court "create a claim which [a plaintiff] has not spelled out in his pleading." Brown v. Matauszak, 415 F. App'x 608, 613 (6th Cir. 2011) (quoting Clark v. Nat'l Travelers Life Ins. Co., 518 F.2d 1167, 1169 (6th Cir. 1975)).

**B.  Section 1983 Standard**

Plaintiff seeks to vindicate alleged violations of his federal constitutional rights under 42 U.S.C. § 1983. Section 1983 creates a cause of action against any person who, acting under color

of state law, deprives an individual of any right, privilege or immunity secured by the Constitution or federal laws. Wurzelbacher v. Jones-Kelley, 675 F.3d 580, 583 (6th Cir. 2012). Thus, to state a § 1983 claim, Plaintiff must allege two elements: (1) a deprivation of rights secured by the Constitution or laws of the United States, and (2) that the deprivation was caused by a person acting under color of state law. Carl v. Muskegon Cnty., 763 F.3d 592, 595 (6th Cir. 2014).

### C. Allegations and Claims

Plaintiff alleges in his complaint that his jailors denied the following requests for medical services: for a test for sexually transmitted diseases on May 12, 2018; for an HIV test on May 17, 2018, and again on May 21, 2018; for a Hepatitis-C test on an unidentified date; for his tooth to be fixed on June 16, 2018; and for lotion to treat a burn on July 19, 2018. (Doc. No. 1 at 5.) Defendants Jeff Shelton, a nurse at the CCJC, and Tim Claflin, the jail administrator, allegedly responded by telling Plaintiff that the requested tests for HIV and Hepatitis-C, as well as the request for dental care, were too expensive, and that Plaintiff would need to wait until he was in state prison to get such treatment. (Id.) Plaintiff alleges that he is severely underweight (at 5'9" and 135 pounds), that he is sick a lot, and that "something is wrong with me." (Id. at 5, 8.) He alleges that even though Defendants have refused to test him for HIV, they are telling guards and other inmates that he has the virus. (Id. at 8, 10–11.) Plaintiff states that "[i]t could be Hep-C or any number of things but they will not check me." (Id. at 8.)

Plaintiff particularly alleges that he told Defendant Shelton that he "shot dope behind someone who has HIV," and that Shelton "said it sucks for me but [an HIV test] costs money we will not spend." (Id. at 11.) In various supplements to the complaint (Doc. Nos. 5, 11–13),[1] Plaintiff

---

[1] As these supplements provide additional context for the claims raised in the original complaint, and do not seek to add new defendants or claims, the Court will consider them together with the complaint in performing this initial review. However, going forward, Plaintiff is advised

3

clarifies that other inmates who can afford to pay for STD tests are getting them, but that he is being denied tests because he cannot afford to pay for them. (Doc. No. 5 at 1; Doc. No. 11 at 1–2; Doc. No. 13 at 2.) He further states that his weight has dropped to 128 pounds, and that he needs snacks or double portions at meals to get his weight back up. (Doc. No. 5 at 2; Doc. No. 13 at 1.) He states that he is sick a lot and has yellow eyes, and that something is wrong with him. (Doc. No. 11 at 1.) He alleges that, in addition to Defendant Shelton, he told Defendant Claflin that he wanted a test because he had been exposed to HIV as "a needle user." (Id.; Doc. No. 13 at 1.) Plaintiff has included in the record copies of "resident request reports" that are directed to the jail administrator, and that seek resolution of his complaints in light of his intravenous drug use and his observation of other inmates getting STD tests. (Doc. No. 11 at 7–8.)

Plaintiff also sues Cumberland County Sheriff Casey Cox. (Doc. No. 1 at 9.) He claims that all Defendants have violated his right to constitutionally adequate medical care under the Eighth Amendment, and his rights under the First Amendment. (Id. at 5, 9–11.) He also claims that telling guards and other inmates that he is HIV-positive is slander and a violation of his rights under the Health Insurance Portability and Accountability Act (HIPAA). (Id.) He seeks relief in the form of a damages award of $1,750,000.00 ($750,000.00 from Defendant Shelton and $500,000.00 each from Defendants Claflin and Cox), a public apology, to be given the various tests that he has requested, "more pain meds," and for all inmates that are severely underweight to be given snack bags or double portions at meals. (Id. at 6.)

---

that he cannot litigate this action by way of letter notices to the Court and supplements to prior filings. The Court will take into consideration his pro se status when evaluating pleadings and pending motions, but Plaintiff is nevertheless required to comply with the rules governing this case, which exist to ensure fairness to all parties. If Plaintiff wishes for the Court to consider arguments and evidence, he must raise them by way of timely and properly filed motions.

D. Analysis

1. Inadequate Medical Care Claim

Plaintiff claims that he was denied appropriate medical care while incarcerated at the Cumberland County Jail in violation of his Eighth Amendment rights. As a pretrial detainee, Plaintiff is protected by the Fourteenth Amendment's Due Process Clause from conduct that the Eighth Amendment would prohibit as against "individuals who have been tried, convicted, and sentenced." Richko v. Wayne Cnty., Mich., 819 F.3d 907, 915 (6th Cir. 2016); see Garretson v. City of Madison Heights, 407 F.3d 789, 795 (6th Cir. 2005) (stating that detainees' Fourteenth Amendment right to adequate medical treatment is "analogous to the Eighth Amendment rights of prisoners.") "Eighth Amendment jurisprudence clearly establishes that deliberate indifference to serious medical needs of prisoners constitutes the unnecessary and wanton infliction of pain that is violative of the Constitution." Darrah v. Krisher, 865 F.3d 361, 367 (6th Cir. 2017) (quoting Estelle v. Gamble, 429 U.S. 97, 104, 105 (1976)) (internal quotation marks omitted). To succeed in bringing a deliberate indifference claim in the medical context, Plaintiff must allege the deprivation of a "sufficiently serious" medical need by a defendant who acted with a "sufficiently culpable state of mind." Darrah, 865 F.3d at 367–68 (citing Farmer v. Brennan, 511 U.S. 825, 834 (1994)).

A "serious medical need" is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." Villegas v. Metro. Gov't of Nashville, 709 F.3d 563, 570 (6th Cir. 2013). The state of mind described by "deliberate indifference" is demonstrated not by mere medical negligence, but only when an official knows of and disregards an excessive risk to the inmate's health or safety. Farmer, 511 U.S. at 836–37. "[N]egligence or negligent medical treatment are not

actionable theories of liability under 42 U.S.C. § 1983." Boldon v. Claiborne Cnty. Det. Ctr., No. 3:16-CV-441-TWP-HBG, 2017 WL 4158612, at *6 (E.D. Tenn. Sept. 19, 2017) (citing Daniels v. Williams, 474 U.S. 327, 328–331 (1986) (finding that a "mere lack of due care" is not constitutionally actionable); Estelle, 429 U.S. at 106 (explaining that "[m]edical malpractice does not become a constitutional violation merely because the victim is a prisoner")).

Plaintiff clearly believes that he has a serious health condition. However, he does not allege that any physician has diagnosed him with a condition requiring treatment. He alleges that he is sick a lot, that something is wrong with him, that he is "severely underweight," and that he has "yellow eyes." Although Plaintiff does not allege that he reported any of these issues to Defendants or sought symptomatic treatment related to them,[2] he appears to allege that he has lost a total of 20 pounds since being refused HIV and Hepatitis-C tests in May 2018. (Doc. No. 13 at 1.)

Standing alone, these symptoms and Plaintiff's history of seeking treatment are perhaps not indicative of a medical need "so obvious that even a lay person would easily recognize the necessity for a doctor's attention." Villegas, 709 F.3d at 570. However, for purposes of this initial screening, Plaintiff's report to Defendants that he injected drugs with a needle "behind someone who has since been diagnosed with HIV-HepC" (Doc. No. 13 at 1), combined with his alleged symptoms, plausibly suggests a serious medical need. The Sixth Circuit has recognized, at least in principle, that allegations supporting deliberate indifference to "a strong likelihood, rather than a mere possibility" of an inmate's HIV infection may provide grounds for a deliberate indifference claim. Doe v. Wigginton, 21 F.3d 733, 738–39 (6th Cir. 1994). "It [is] common knowledge that . . . diseases such as HIV and hepatitis can be transmitted through dirty needles." United States v.

---

[2] Indeed, Plaintiff only alleges that he requested symptomatic treatment for tooth pain in June and August of 2018 (Doc. No. 12 at 3–4) and "a burn on [his] stomach [that got] dry and flaky" in July 2018 (id. at 2).

Mohammed, No. 1:09-CR-103, 2010 WL 11492439, at *2 (S.D. Ohio Mar. 31, 2010), aff'd, 501 F. App'x 431 (6th Cir. 2012), as amended (Nov. 5, 2012). Presuming the truth of Plaintiff's allegation that he shared a needle with someone who has been diagnosed with the virus, as the Court must on initial review, it cannot be said that he fails to state a colorable claim based on the seriousness of his medical need, despite his infrequent requests for treatment.

As to the subjective component of this claim, "[a] *medical* decision not to order [diagnostic] measures [] does not represent cruel and unusual punishment," but, at most, medical malpractice. Estelle v. Gamble, 429 U.S. at 107 (emphasis added); see Knox v. Correct Care Sols., No. 2:16-CV-12683, 2016 WL 4362872, at *2 (E.D. Mich. Aug. 16, 2016). However, Plaintiff does not allege that he was denied an HIV test after a medical examination or based upon consideration of his history and current complaints; rather, he was allegedly denied the test despite his history and complaints because, according to Defendant Shelton, "it costs money we will not spend." (Doc. No. 1 at 11.) This allegation is sufficient to establish a colorable claim of deliberate indifference.

### a. Individual and Official Capacity Claims

As relief, Plaintiff seeks, e.g., an award of damages and the injunctive remedy of a Court-ordered diagnostic test. (Doc. No. 1 at 6.)[3] He sues Defendants Shelton and Claflin in both their official and individual capacities. (Id. at 2.) He does not name the capacity in which he sues Defendant Cox, nor does his complaint against Cox provide notice of any intent to sue him in his individual capacity, as it simply alleges Cox's responsibility for "inadequate medical care" without

---

[3] Plaintiff also seeks relief on behalf of other inmates who want to be tested, or who are severely underweight. (Doc. No. 1 at 6.) However, as a pro se litigant, Plaintiff is not entitled to pursue relief on behalf of anyone other than himself. Shepherd v. Wellman, 313 F.3d 963, 970 (6th Cir. 2002) ("Although 28 U.S.C. § 1654 provides that '[i]n all courts of the United States the parties may plead and conduct their own cases personally or by counsel,' that statute does not permit plaintiffs to appear pro se where interests other than their own are at stake.").

any allegation that Cox knew of the requests for, and refusals of, these diagnostic tests. (Id. at 9.) Aside from being identified on one page of the complaint as responsible for the harms that are claimed with greater specificity against Shelton and Claflin (id.), Defendant Cox is not otherwise mentioned in the complaint or its various supplements. Accordingly, the Court presumes that Cox is sued in his official capacity only. Brown v. CCA/Metro Davidson Det. Facility, No. 3:13-cv-00423, 2013 WL 3071052, at *2 (M.D. Tenn. June 18, 2013) (citing Whittington v. Milby, 928 F.2d 188, 193 (6th Cir.1991)).

An official-capacity claim against a county employee[4] is effectively a claim against the county itself. See Alkire v. Irving, 330 F.3d 802, 810 (6th Cir. 2003) (citing, e.g., Kentucky v. Graham, 473 U.S. 159, 165 (1985)). While counties and other municipal defendants are "persons" subject to suit under § 1983, municipal liability may only be established if the plaintiff's harm is alleged to have been caused by the execution of an official policy or custom of the municipality, rather than simply the misdeeds of municipal employees. Id. at 814–15. In other words, "[a] plaintiff seeking to impose liability under § 1983 must demonstrate that, through its deliberate conduct, the municipality was the moving force behind the injury alleged," such that there is a "direct causal link between the municipal action and the deprivation of federal rights." Burns v. Robertson Cnty., 192 F. Supp. 3d 909, 920 (M.D. Tenn. 2016) (quoting Bd. of Cnty. Comm'rs v. Brown, 520 U.S. 397, 404 (1997)) (internal quotation marks omitted).

Here, Plaintiff's allegation that the requested HIV test was denied because "it costs money we will not spend," combined with his allegation that only inmates who can afford to pay for STD tests are getting them, is sufficient to colorably claim that his harm was caused by a Cumberland

---

[4] Defendant Cox, the Cumberland County Sheriff, is clearly a county employee. The Court presumes for purposes of this initial review that Defendants Shelton and Claflin are also Cumberland County employees.

8

County policy or custom of refusing diagnostic tests in order to reduce costs. See, e.g., Ceparano v. Suffolk Cnty. Dep't of Health, 485 F. App'x 505, 509 n.7 (2d Cir. 2012) ("As the District Court correctly held, the basis for the claim of liability is the County's alleged policy of denying medical care to inmates at the SCCF in order to reduce costs."); cf. Stevens v. Gooch, 48 F. Supp. 3d 992, 1002–03 (E.D. Ky. 2014), aff'd, 615 F. App'x 355 (6th Cir. 2015) (finding no municipal liability based on custom because "[t]here is no evidence before the Court that other inmates were denied medical care in order to minimize costs at the jail").

Accordingly, Plaintiff's claim of inadequate medical care will proceed for further development against Defendants Shelton and Claflin in their individual and official capacities, and against Defendant Cox in his official capacity.

### 2. Remaining Claims

Plaintiff generally claims that Defendants engaged in "abuse of power by an authority figure," without specifying the source of his right to be free from such abuse, outside of the constitutional right already recognized above. (Doc. No. 1 at 9–11.) This conclusory claim will be dismissed.

Plaintiff further claims that Defendants violated his HIPAA rights and slandered him by telling other inmates and guards that he was HIV-positive. (Id.) However, federal "[c]ourts have repeatedly held that HIPAA does not create a private right" of action and "cannot be privately enforced . . . via § 1983." Crockett v. Core Civic, No. 3:17-cv-00746, 2017 WL 3888352, at *4 (M.D. Tenn. Sept. 5, 2017) (quoting Adams v. Eureka Fire Prot. Dist., 352 F. App'x 137, 138–39 (8th Cir. 2009)). As to Plaintiff's allegation of slander, such an allegation is not actionable as a constitutional violation under § 1983. Edwards v. Georgia, No. CV417-072, 2017 WL 3393082, at *2 (S.D. Ga. July 19, 2017) (stating "the Constitution does not forbid slander") (citing, e.g., Paul

9

v. Davis, 424 U.S. 693 (1976)). Even if a defamation claim had been sufficiently pled under Tennessee law, such a claim would only be actionable if the defendants' words are alleged to be both false and "a serious threat to the plaintiff's reputation." Brown v. Christian Bros. Univ., 428 S.W.3d 38, 50 (Tenn. Ct. App. 2013). "The plaintiff must plead and prove injury from the alleged defamatory words, whether their defamatory meaning be obvious or not." Memphis Pub. Co. v. Nichols, 569 S.W.2d 412, 419 (Tenn. 1978). Plaintiff's claim of slander is not supported by any such allegations, but only by the conclusory claim that the alleged slander puts him in danger. (Doc. No. 1 at 9–11.) Plaintiff's allegations of slander and HIPAA violations fail to state a claim upon which relief may be granted.

Nor can these allegations be liberally construed as asserting a violation of Plaintiff's Fourteenth Amendment right to informational privacy, as "the Sixth Circuit has repeatedly rejected claims asserting a constitutional right to nondisclosure of personal information." Jones v. Crompton, No. 1:13-cv-490, 2013 WL 3967159, at *3 (W.D. Mich. Aug. 1, 2013), aff'd, No. 13-2088 (6th Cir. Mar. 17, 2014) (citing, e.g., Lee v. City of Columbus, 636 F.3d 245, 261 (6th Cir. 2011); Doe v. Wigginton, 21 F.3d at 740; J.P. v. DeSanti, 653 F.2d 1080 (6th Cir. 1981)). In particular, the court in Doe v. Wigginton rejected the argument that disclosure of the inmate's HIV infection to a prison guard violated any constitutional right to privacy. 21 F.3d at 740.[5] In light of this authority, and particularly because Plaintiff's HIV status is not known, his allegations

---

[5]    But see Moore v. Prevo, 379 F. App'x 425, 428 (6th Cir. 2010) (affirming Wigginton's application to disclosure of HIV-positive status to prison guards, but distinguishing Wigginton insofar as disclosure is made to other inmates, in which case Fourteenth Amendment privacy interest guards against disclosure). The unpublished decision of the divided panel in Moore has been regarded as "neither binding nor persuasive in light of other published Sixth Circuit authority both predating *Moore* (*Wigginton*), and post-dating *Moore* (*Lee*)," as it does not employ the analysis called for in these published cases but expressly adopts the Third Circuit's analysis of the issue. Jones v. Crompton, 2013 WL 3967159, at *4. Moreover, unlike the plaintiff in Moore, Plaintiff's HIV status is unknown, a critical distinction that renders Moore inapposite here.

concerning Defendants telling guards and other inmates that he was HIV-positive fails to state a claim upon which relief may be granted.

Finally, Plaintiff alleges that Defendants have violated his First Amendment rights, without alleging any facts to support such a violation. This conclusory allegation fails to state a claim and must therefore be dismissed.

## III. Conclusion

For the reasons set forth above, the complaint states a colorable claim for denial of constitutionally adequate medical care against Defendants Shelton and Claflin in their individual and official capacities, and against Defendant Cox in his official capacity. The complaint otherwise fails to state a claim upon which relief may be granted. The medical care claim will be allowed to proceed, while all other claims will be dismissed from the action pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).

An appropriate Order will enter.

_____
WAVERLY D. CRENSHAW, JR.
CHIEF UNITED STATES DISTRICT JUDGE